[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-14271

Non-Argument Calendar

_____

LOUIS A. HERRERA,

Plaintiff-Appellant,

versus

CITY OF HIALEAH, FLORIDA,
a municipal corporation and political subdivision
of the state of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:20-cv-23191-WPD

―――――――――――――

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

PER CURIAM:

Louis Herrera appeals the United States District Court for the Southern District of Florida's order granting summary judgment to the City of Hialeah, Florida ("the City") on his discrimination claims arising under the Uniformed Servicemembers Employment and Reemployment Rights Act (the "USERRA"), 38 U.S.C. § 4311(a), *et seq*. First, Herrera argues that the District Court erred when it granted summary judgment to the City on his USERRA claims because he met his prima facie burden of establishing disparate treatment of him compared to non-military employees with similar work records, and that his military status was a motivating factor in the City's decision to not promote him and deny him advancement opportunities. Second, he argues that the District Court did not properly shift the burden to the City to show that it would have promoted the non-military members over him, and the City failed to show that it would have made the same promotional decisions even without considering his military status. Because Herrera failed to establish a prima facie case of discrimination under USERRA, we affirm the District Court's grant of the City's motion for summary judgment.

# I.

Herrera, through counsel, filed a complaint against the City, stating two claims for relief under USERRA. Herrera was a member of the United States Army and the Florida National Guard and also worked as a police officer for the Hialeah Police Department (the "Department") for over eighteen years. As part of the promotion process, the Department requires candidates to pass a promotional exam, and then it ranks candidates based on their score on the exam. According to the complaint, Herrera applied for the position of police sergeant three times—in August 2015, August 2016, and December 2016—and was well qualified for the position because of his exceptional employment evaluations, employment performance, and scores on his promotional exam, which placed him in the top three candidates.[1]

Herrera claims that despite scoring well and being ranked higher, other "less qualified, [ ] lower ranked[,] non-reservist" candidates were consistently elevated over him. Herrera alleged that he received favorable employment evaluations, received multiple department and civilian commendations, was awarded the Department's highest award, the Gold Medal of Valor, and that he never received a negative evaluation. According to the complaint,

---

[1] Promotions with the Department are made according to the Rule of Three. The three candidates with the highest point totals based on their promotional examination and other points that may be awarded are presented for possible promotion, and the mayor chooses among the three candidates.

Herrera applied for career advancement positions, including as a member of the Community Response Team, S.W.A.T. Police Sniper, S.W.A.T. Rappel Master, and detective positions, but was denied each time. The Department also allegedly denied his applications for lateral positions and requests from federal agencies to allow Herrera to assist on task forces. Finally, Herrera argued that other non-reservist employees could make use of an open-door policy with the police chief, but Herrera's requests to speak with the chief were consistently denied.

Following discovery, the City moved for summary judgment. The City argued that the facts, taken in the light most favorable to Herrera, did not establish a prima facie case of USERRA discrimination.[2] The District Court granted the City's motion.

As relevant here, the District Court held that Herrera's USERRA claims failed as a matter of law. The District Court did not find the records of those promoted over Herrera to permit a reasonable inference of discrimination because, according to the Court, they did not show that Herrera was objectively more qualified—and even if they did, the Court could not substitute its judgment for the City's, so long as the hiring decision was not made in

_____

[2] The City also argued that Herrera's suit was barred under the doctrine of res judicata; that the City had legitimate, non-discriminatory reasons for taking the disputed actions and it would have taken them even in the absence of Herrera's military status; and that there was no basis for finding the City's actions to be willful USERRA violations. Those arguments are not relevant to this appeal.

a discriminatory manner. According to the Court, "Mayor Hernandez, the decisionmaker, decided that each of those selected over Herrera was the better candidate for the job. Though Herrera may disagree with that decision, he presents no other evidence from which a reasonable jury could conclude that such decision was motivated by discrimination based on Herrera's military service." Order Granting Mot. for Summ. J., Doc. 50 at 8–9. Herrera timely appealed.

## II.

We review a district court's order granting summary judgment *de novo*, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is only proper if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* Bare and self-serving allegations when the plaintiff has no personal knowledge are inadequate to carry the plaintiff's burden on summary judgment. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000).

Under USERRA, a person who is a member of, or has performed service in, a uniformed service shall not be denied "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer" based on that membership or performance of service. 38 U.S.C. § 4311(a). An employer violates USERRA where the individual's membership or service in the uniformed services is a motivating factor in the

employer's failure to promote the individual, unless the employer proves that it would not have promoted the individual absent the individual's membership or service. *See id.* § 4311(c)(1).

A USERRA claim brought under 38 U.S.C. § 4311 requires proof of a discriminatory motive, and we employ the so-called "but for" test. *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005).[3] USERRA "clearly mandates proof of discriminatory motive." *Id.* To establish a prima facie case of discrimination, the plaintiff must demonstrate by a preponderance of the evidence that his military membership or service was a motivating factor in the employer's decision. *See id.* A motivating factor does not necessarily have to be the sole cause for the employer's decision but is defined as one of the factors that a truthful employer would list as its reasons for its decision. *Id.*

A court can infer a discriminatory motivation from circumstantial evidence and a variety of considerations, such as (1) the temporal proximity between the plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and other actions of the employer; (3) an employer's expressed hostility toward members of the protected class combined with its knowledge of the plaintiff's

---

[3] This case has been superseded by statute on unrelated issues regarding when an employer qualifies as a successor in the interest of a prior employer.

military activity; and (4) disparate treatment of employees with similar work records. *Id.*

In *Coffman*, we held that the district court did not err when it granted summary judgment to the employer because the employee failed to present direct or circumstantial evidence that the employer relied on, considered, or conditioned its decision on the employee's military status. *Id.* at 1239. We emphasized that, although there was close proximity between the employee's military status and the employer's decision not to hire him, the employee failed to show that the employer expressed hostility towards servicemembers, the employer hired both military and non-military members, the decision-makers testified that they did not rely on the employee's military status in deciding not to hire him, and the employee failed to show any disparate treatment of active military employees compared to other employees with similar work records. *Id.*

The USERRA statute is very similar to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a). *Staub v. Proctor Hosp.,* 562 U.S. 411, 417, 131 S. Ct. 1186, 1191 (2011). Under Title VII case law, we have explained that a plaintiff must show that he and his comparators were "similarly situated in all material respects" to demonstrate an intentional discrimination claim under

*McDonnell Douglas*.[4]  *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).

We explained that a similarly situated comparator could include another individual who (1) "engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) was "subject to the same employment policy, guideline, or rule as the plaintiff"; (3) was "ordinarily (although not invariably) . . . under the jurisdiction of the same supervisor as the plaintiff"; or (4) "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28.  The comparison turns on substantive likeness, and the comparator must be sufficiently similar such that they cannot be reasonably distinguished. *Id.* at 1228.

The Supreme Court has held that an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision.  *Staub*, 562 U.S. at 417–23, 131 S. Ct. at 1186.  In *Staub*, the Supreme Court ruled that a plaintiff may assert a "cat's paw" claim under USERRA by showing that (1) a supervisor performed an act motivated by the animus that was intended to cause an adverse employment action; and (2) the act was the proximate cause of the ultimate adverse employment action. *Id.* at 418–19, 131 S. Ct. 1186, 1191–92.

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

### III.

Here, the District Court did not err when it granted the City's motion for summary judgment on Herrera's USERRA discrimination claim because Herrera failed to meet his prima facie burden of establishing that the City discriminated against him based on his military status, in violation of USERRA.[5]  In fact, Herrera does not even offer evidence that the City *considered* his military status, let alone that it was a motivating factor.

Though they are not alleged as separate claims, Herrera essentially makes three separate arguments that the City discriminated against him in violation of USERRA.  He argues that his military membership was a motivating factor (1) in the City's decision not to promote him, (2) in the City's denial of his special requests for career advancements,[6] and (3) for Chief Velazquez's different treatment of Herrera under his "open door" policy.  We address each claim in turn.

---

[5] To the extent Herrera raises a "cat's paw" theory of discrimination, we decline to consider it because he raises it for the first time on appeal.  An issue that was not raised in the district court and is raised for the first time on appeal is considered forfeited, and we will not address its merits absent extraordinary circumstances.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004).

[6] The City argues that Herrera abandoned this argument because he did not raise it in his initial brief.  But Herrera discussed the denial of his requests throughout the initial brief, so this claim was not abandoned.

*A.*

Herrera did not offer direct evidence to show that his military status was at least a motivating factor in the City's decision not to promote him. As such, he needed to present enough circumstantial evidence to raise the inference of unlawful discrimination, which he failed to do.

Herrera argues that he met his prima facie burden by demonstrating that he was subjected to disparate treatment compared to non-military employees with similar work records. He contends that his work record was "objectively superior on every metric compared to those promoted over him." Appellant's Br. at 27. But Herrera only looks at certain metrics. According to Herrera, he "had no disciplinary history, objectively better performance evaluations, for the most part made more arrests and received more commendations from both citizens and the department." Plaintiff's Resp. in Opp. To Def.'s Mot. for Summ. J., Doc. 42 at 8. However, he overlooks criteria such as seniority,[7] initiative,[8] and variation in roles within the Department.[9]

---

[7] Two of the candidates promoted over Herrera had more seniority than he did.

[8] In his declaration, Mayor Hernandez indicated that all three candidates who were promoted "exhibited outstanding initiative." Chief Velazquez, however, believed that Herrera needed to improve his initiative.

[9] All three of the individuals promoted over Herrera held five or more different roles within the Department before their promotions, whereas Herrera

It is difficult to say that Herrera's work record was objectively superior in every way to the non-military coworkers who were promoted over him.  At best, the work records of the other employees are similar to Herrera's.[10]  However, Herrera overlooks a key component of the hiring process: the importance Mayor Hernandez placed on the interview.  Even assuming that the employees' records were similar in every other respect, as a result of their interviews, Mayor Hernandez "was very favorably impressed by [the other officers] and much less so by Herrera."

Ultimately, the evidence put forward by Herrera is not enough to show that "but for" his military service, he would have been promoted.  *Coffman* does not create a checklist for meeting the prima facie burden in a USERRA case.  For example, had

---

only held 2 roles.  Herrera argued that he would have had more varied assignments but for the numerous denials of his requests for career advancement, but even if the requests for career advancement relevant to his USERRA claim had been granted, he would still have less varied assignments than the other candidates.

[10] Herrera argues that the District Court "invented a new prima facie standard from whole cloth, requiring [him] to prove that the records of [the other employees] were 'significantly inferior' to his." Appellant's Br. at 28.  The District Court did say that "the Court does not find the records of those promoted over Herrera significantly inferior to permit a reasonable inference of discrimination."  Order on Def.'s Mot. for Summ. J., Doc. 50 at 8.  This statement, however, is not the District Court inventing a new prima facie standard for Herrera to meet.  Instead, this is best read as the District Court responding to Herrera's claim that his employment records were so superior to the others that they raised an inference of discrimination on their own.

Herrera been able to show a temporal proximity between the failure to promote him and his military service, that alone would not automatically meet his prima facie burden—which is what happened in *Coffman*. 411 F.3d at 1239. Instead, *Coffman* presents a non-exhaustive list of tools a plaintiff may use to present sufficient evidence giving rise to an inference that discrimination was a motivating factor in the employment decision.

Here, like in *Coffman*, the evidence on the record is simply insufficient to allow a reasonable jury to make such an inference. While Herrera can show that Mayor Hernandez promoted three non-military officers over a military officer, the evidence presented does not support an inference that Mayor Hernandez promoted three non-military officers over Herrera *because* he was a military officer. Further undercutting Herrera's argument is the fact that, as in *Coffman*, the City *has* promoted individuals with military experience to sergeant.

## B.

Similar to his claim that the City discriminated against him by failing to promote him, Herrera likewise failed to offer direct evidence that discrimination was a motivating factor in the denial of his requests for other opportunities for advancement. Nor did Herrera present enough circumstantial evidence to raise a discriminatory inference here.

Only a few of Herrera's requests were denied, and only one was denied relating to his military status.[11] Herrera failed to explain how an inference of discrimination arose from the few denials of his special requests, as none of them referenced his military leave nor were they denied while he was on military leave.[12] The only work records in the record, other than Herrera's, are those of the candidates what were promoted over Herrera, so no evidence of disparate treatment of non-military employees with similar work records exists for Herrera's argument that the City discriminated against him in denying his requests for opportunities for advancement.

Herrera attempted to show a pervasive culture of hostility towards his military status with respect to these opportunities for advancement by the deposition of Clifford Lockwood, Jr. According to Lockwood's deposition, he met with Chief Velazquez to request that Herrera join his IRS task force and he explained the financial benefits to the Department of allowing Herrera to join the task force. Lockwood claims that when he pitched the idea to Chief

---

[11] The previous police chief denied one of Herrera's requests in 2005 because Herrera was activated to military duty and would not be available to attend the SWAT school, but when Herrera resubmitted his request in 2006, it was approved. Regardless, Herrera testified that the previous police chief did not discriminate against him.

[12] Herrera claims that his second request to join the Community Response Team was denied when he was on military leave. But this is unsupported by the record; this request was denied prior to Herrera going on military leave.

Velazquez, who denied the request, "it was really weird," he "got a weird feeling," and it "felt very weird that the chief of police said no." Lockwood claimed that he had a feeling that Chief Velazquez did not like Herrera because "Herrera was busy defending him and the rest of our country and he wasn't always present." But Lockwood's allegations are conclusory and speculative. According to Lockwood, "[t]his is just a think, and this is intuitive and a feeling I have." Without more, this "feeling" is not enough to give rise to an inference of discrimination.

## C.

Finally, Herrera failed to establish a prima facie case of unlawful discrimination based on Chief Velazquez denying him access under the "open door policy." In the first place, Herrera offers no proof that such a policy even existed. He further fails to show evidence that (1) he was denied the policy (2) because of his military status, (3) while other non-military members were given the benefits of the policy. Herrera claims that "the record is undisputed that non-reservist employees had no problem obtaining meetings with Chief Velazquez through his 'open door' policy." Appellant's Br. at 19. But he only supports that argument by pointing to the complaint and his own deposition testimony, and bare and self-serving allegations are not enough to meet Herrera's burden on summary judgment. *Stewart*, 232 F.3d at 851.

## IV.

If the plaintiff meets his prima facie burden, the burden then shifts to the employer to prove, by a preponderance of the evidence, that legitimate reasons, standing alone, would have induced it to take the same adverse action. *Coffman*, 411 F.3d at 1238–39. But the burden does not shift to the employer unless the employee first shows that his military status was at least a motivating or substantial factor in the employer's decision. *Id.* at 1239. Here, Herrera did not meet that prima facie burden, so the burden never shifted to the City. As such, we decline to address Herrera's additional arguments on appeal. The District Court's grant of summary judgment is

**AFFIRMED**.